# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

CINDY YAMILETH CARDONA MEZA                                    PETITIONER

v.                                                    No. 4:26-cv-148-BJB

JASON WOOSLEY, ET AL.                                         RESPONDENTS

* * * * *

## OPINION & ORDER

Cindy Yamileth Caronda Meza, a citizen of Honduras, entered the United States, apparently without lawful permission, in 2006. *See* Petition for Writ of Habeas Corpus (DN 1) ¶ 2; Government Response (DN 10) at 2. Immigration authorities removed her, but she soon reentered without inspection in 2007. Petition ¶ 3. Then, in 2012, she was arrested in this country for petty theft, which alerted immigration officials that she had (again) unlawfully reentered the country. ¶ 5. So the Government reinstated the Petitioner's 2006 removal order. Response at 2–3. Rather than immediately remove her, however, the Government allowed the Petitioner to remain in the country under an "order of supervision," or "OSUP." Petition ¶ 7. This type of pre-removal supervision, which applies if an "alien does not leave or is not removed within the [90-day] removal period," 8 U.S.C. § 1231(a)(3),[1]

---

[1] That subsection provides:

(3)  Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien—

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(3).

1

required periodic appointments with immigration officials and restricted her activities and conduct, *see* Order of Supervision (DN 1-1).

During one such supervision appointment, at the Indianapolis ICE office in March 2025, immigration officials detained her. Petition ¶¶ 9–10. The officers did so, the Petitioner says, despite her decade-long compliance with the supervision order and without any written notice or explanation of the order's revocation or her detention. *Id.* Nor did she receive any sort of hearing, ¶ 15, before her transfer to the Grayson County (Ky.) Jail, ¶ 10. Since then, she has applied for statutory withholding of her removal order after expressing her fear of returning to Honduras. ¶ 11; *see* 8 U.S.C. § 1231(b)(3) (restricting the removal of an alien to any country that would threaten her "life or freedom").

She has also filed a habeas petition seeking release on the ground that her 2025 detention violated the regulations governing supervision orders. *See* Petition at 10–11.

As contemplated by 8 U.S.C. § 1231(a)(3), the Executive Branch has promulgated regulations governing (among other things) the detention and supervision of aliens held beyond the 90-day removal period. Two aspects of those regulations potentially apply to aliens released under an order of supervision: 8 C.F.R. § 241.4 & § 241.13. The first provision applies by default to an "alien" who has been "in custody or grant[ed] release or parole" beyond the 90-day removal period. § 241.4(a). The second, promulgated after the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), applies to an "alien" who "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). Each contains somewhat different requirements for the Government to revoke the supervision order and detain the alien. *Compare* § 241.4(*l*) and § 241.13(*i*). Confusingly, the Petition (at 10) alleges a violation of the latter while the Reply (DN 12 at 3) invokes the former. The Government, for its part, says nothing about which one applies to the Petitioner's 2012 supervision order. Though in the end the difference turns out not to matter—since the Government doesn't contend that it complied with either provision's revocation requirements.

That is a problem for the Government. The Supreme Court long ago held that habeas relief is available when "[r]egulations with the force and effect of law supplement" the immigration statutes and "requir[e]" or "forbid" specific agency procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954) (citations omitted). Failure to follow those regulations, the Court held, could render continued detention legally unjustified. In *Accardi*, the Attorney General had included an alien on a list of "unsavory characters," which could have led to his deportation. *Id.* at 264. The alien asked the Board of Immigration Appeals to

suspend deportation, but the Board denied that request. *Id.*  Then the alien filed a habeas petition, arguing that denial contravened agency regulations requiring the Board to exercise independent discretion uninfluenced by the Attorney General. *Id.* at 267.  The Supreme Court agreed with the alien that an agency's violation of its own regulations (if proven) would entitle a petitioner to habeas relief. *Id.* at 268.

The Government leaves most and arguably all of this uncontested.  Its response doesn't defend its compliance with the regulations applicable to the revocation of a supervision order.  Nor does it contend that these regulations are not binding.  Nor that *Accardi* doesn't apply here.  It merely argues that the Petitioner bears the burden of showing unlawful custody, that she is properly detained under 8 U.S.C. § 1231, and that—although it hasn't yet found her supervision-revocation papers—it will keep looking for them.  *See* Response 2–4.

The first point is uncontested.  The Petitioner doesn't dispute her burden of proof in habeas and has proceeded to carry that burden.  The Government hasn't resisted her allegations that immigration officials released her into the country under an order of supervision, that she has complied with the terms of that supervision order since, and that she was arrested and detained by immigration officials who haven't shown any compliance with the regulations governing revocation of her supervision order.  *See* 8 C.F.R. §§ 241.4, 241.13.  Under *Accardi*, that establishes a prima facie case for unlawful detention and habeas relief.

The Government's second argument is beside the point.  *See* Response at 4 (The Petitioner "is currently detained under 8 U.S.C. § 1231 …. because her prior order of removal was reinstated.").  Whether § 1231 or some other statutory provision governs her detention, however, the Government hasn't made any showing why or what portion of that statute would displace its own implementing regulations specifying the circumstances under which the Petitioner's release may be revoked.  And because the Government agreed that "a hearing is unnecessary" to address any factual disputes, it has waived any response to the Petitioner's allegations that it revoked her supervision order without notice, documents, or an interview.  *See* Joint Status Report (DN 11) at 1.[2]

The third point is simply a concession.  "Since Respondents received notice of the Petition, they have attempted to identify and locate documents related to the revocation of Petitioner's order of supervision. … However, Respondents cannot

---

[2]  The Petition (at 6) contends that this Court has jurisdiction to grant the writ.  The Government hasn't responded to that contention.  The Court has previously addressed the issue of jurisdiction in *M.L.P.*, 2025 WL 3721863, at *3.  And the same reasoning supports jurisdiction here: "Without any evidence suggesting that M.L.P.'s detention 'aris[es] from' efforts 'to remove' her, § 1252(b)(9), the Court lacks any basis on which to doubt its jurisdiction." *Id.* (alterations in original).

currently show that Petitioner's order of supervision was revoked in accordance with 8 C.F.R. § 241.4(*l*)(2)." Response at 5.

This case thus closely resembles this Court's decision in *M.L.P. v. Woosley, et al.*, 2025 WL 3721863, at *4 (W.D. Ky. Dec. 23, 2025). There, too, the "Government ha[d] not identified any lawful basis" for detention. To its credit, the Government responds with complete candor on this point:

> Respondents acknowledge that the Court has previously ruled on the substantive question regarding lack of documentation of termination of an order of supervision. *See M.L.P. v. Woosley, et al.,* Civil Action No. 4:25-CV-170, DN 14. Here, Respondents have not located documents revoking Petitioner's supervision, though efforts at locating those documents have been hampered by the recent reassignment of ICE officers to provide security at airports across the country. The relevant revocation documents would likely be in a paper file, and the ICE officers who are accustomed to using and reviewing those files are, in large part, currently unavailable.

Response at 2.

With these concessions, the Government has offered no lawful authority for the Petitioner's detention.

That leaves the question of remedy. The Petitioner urges the Court to order her immediate release, Reply at 4, while the Government urges the Court merely to "order Respondents to provide the notice described in 8 C.F.R. § 241.4(*l*)(2)," Response at 5. District courts, across the country, have embraced both views. *Compare Ahmed v. Olson,* 2026 WL 836123, at *6 (E.D. Ky. Mar. 26, 2026) (unconditional release) ("Respondents revoked his OSUP without proper notice, and thus, because no clear reason has ever been articulated, [Petitioner] continues to be denied a meaningful opportunity to challenge the revocation.") (quotation marks omitted)*, with Duque v. Maples*, 2026 WL 32094, at *5 (S.D. Ind. Jan. 6, 2026) (conditional order) ("[T]he government is forthwith ordered to grant Petitioner the process she was due from the beginning and, if it is unable to do so in the expeditious manner required, to release her.").

The Government has not updated the Court, in response to the Petitioner's Reply, regarding any additional documents it has located or process it has supplied. And it provides no reason to limit the remedy to compliance with C.F.R. § 241.4(*l*)(2). *See* Response at 5 ("The Court should instead order Respondents to provide the notice due in 8 C.F.R. § 241.4(*l*)(2)".). Even that unsupported assertion ignores the regulations' alternative mechanism for revoking supervised release, § 241.4(*l*)(1), which requires not only notice of the "reasons for revocation," but also "promp[t]"

4

provision of "an initial informal interview."  Nor has the Government, as previously mentioned, responded to the Petitioner's contentions that § 241.13's regulatory process applies here.  Therefore the most appropriate remedy is not additional time for belated process, but rather release consistent with the conditions of the Petitioner's previous supervision order.  *See* 28 U.S.C. § 2243 (authorizing court to "dispose of the matter as law and justice require"); *cf. Gentry v. Deuth*, 456 F.3d 687, 697 (6th Cir. 2006) ("the choice of habeas remedy" when granting postconviction relief "lies within the district court's sound discretion").  This order does not, however, constrain the Government from any future action regarding the underlying removal order or subsequent supervision order—so long as those actions comply with the applicable law and regulations.

## ORDER

Because the Government has not identified any lawful basis to revoke the Petitioner's order of supervision—and therefore to detain her—the Court grants the petition for habeas corpus (DN 1) and directs the Respondents to promptly release the Petitioner.  Because the Court grants the habeas petition on the narrower ground that the Government concededly violated federal immigration regulations in detaining her notwithstanding the supervision order, nothing requires consideration of the broader statutory and constitutional arguments raised in the Petition.